UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CIV-24411-BLOOM/LOUIS

VERNON C. SMITH, individually, and
VERNON EUGENE SMITH, as Executor
of the ESTATE OF LINDA L. SMITH, Deceased,

       Plaintiffs,

vs.

NCL AMERICA LLC d/b/a NCL AMERICA,
NCL (BAHAMAS) LTD., A BERMUDA
COMPANY and AKUA LLC d/b/a MAUI
REEF ADVENTURES,

       Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT AKUA LLC'S MOTION TO DISMISS
AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

    Plaintiffs, VERNON SMITH, Individually, and VERNON EUGENE SMITH, as Executor of the Estate of Linda L. Smith (hereinafter "Plaintiff"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Southern District, hereby files this, their Response to Defendant, AKUA LLC's (hereinafter "AKUA"), Motion to Dismiss Complaint, and as states as follows:

    1.    This matter presents a wrongful death action. While on an Anniversary Cruise aboard Defendant NCL's PRIDE OF AMERICA, as a consequence of Defendants' negligence and misrepresentations, Plaintiffs' Decedent drowned while participating in a snorkeling excursion operated by Defendant AKUA off the coast of Maui, Hawaii.

    2.    A large part of Defendant AKUA's Motion to Dismiss is dedicated to arguing that it is not subject to personal jurisdiction before this Court. Defendant AKUA fails to bring to the Court's attention that fact that pursuant to the Passage Contract issued Plaintiff's Decedent by

Case No. 19-CIV-24411-BLOOM/LOUIS
Page 2

Defendant NCL for th subject cruise, Plaintiff must bring this action before this Court and had Plaintiff attempted to sue Defendant AKUA in Hawaii, Defendant AKUA would be arguing that it may *only* be sued in the Southern District of Florida.

## MEMORANDUM OF LAW

**I.    Defendant AKUA is Subject to Personal Jurisdiction Before this Court in This Action**

**A.    Defendant AKUA Has Consented to Personal Jurisdiction Before This Court for This Action**

Pursuant to the passage contract issued Plaintiff's Decedent by Defendant NCL, **Plaintiff was contractually bound to bring this action only before the U.S. District Court for the Southern District of Florida**.  As outlined below, in Paragraph 23 of the "Standard Shore Excursion Agreement"[1] between Defendant NCL and Defendant AKUA, **Defendant AKUA has agreed to jurisdiction in Florida in connection with a passenger action such as the present.** Specifically, Defendant AKUA has agreed:

> **Section 23 – Law and Jurisdiction**
>
> The Parties hereby agree that this Agreement shall be governed by the laws of the State of Florida, shall apply without regard to conflicts of law principles. *The parties hereby irrevocably submit, in any suit, action or proceeding arising out of or relating to this agreement or any transactions contemplated hereby* (whether during the term hereof, after its termination or expiration or in connection with its negotiation), *to the exclusive jurisdiction of the United States District Court for the Southern District of Florida* or, if jurisdiction is not available they are in, the jurisdiction of any court located in Miami-Dade County, Florida, *and waive any and all objections to such jurisdiction or venue that they may have under the laws of any state or country, including without limitation, any argument that jurisdiction, situs and/or venue or inconvenient or otherwise improper.* Operator further agrees that process may be served upon the operator in any manner authorized under the laws of the United States or the State of Florida, and waives any objection that the Operator may otherwise have to such a process.  (Emphasis added).

The language in this agreement is clear and unambiguous.  Defendant AKUA **irrevocably submitted to this Court's jurisdiction for this action.**  Moreover, Defendant AKUA **waived its**

---

[1] Filed in support of Defendant AKUA's Motion to Dismiss [DE 38].

**right to bring its present Motion challenging jurisdiction.** *Steffan v. Carnival Corp. and Chukka Caribbean Adventures Ltd.,* Case No. 16-Civ-25295-Altonaga/Goodman (S.D.Fla. Aug, 1, 2017) (foreign shore excursion operator subject to jurisdiction in Florida based upon its consent to jurisdiction) (attached as **Exhibit A**); *Lienemann v. Cruise Ship Excursions, Inc. and Carnival Corp.,* 349 F.Supp.3d 1269 (S.D.Fla. 2018) (foreign shore excursion operator subject to jurisdiction in Florida based upon its consent to jurisdiction) (attached as **Exhibit B**).

Fla.Stat. §685.101 provides:

> The parties to any contract . . . in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value . . . may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract . . . the effect thereof and their rights and duties thereunder, in whole or in part, whether . . . such contract . . . bears any relation to this state.

Fla.Stat. §685.101(1). Section 685.102 then creates a parallel grant of jurisdiction:

> Notwithstanding any law that limits the right of a person to maintain an action or proceeding, any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to [section] 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

Fla.Stat. §685.102(1).

Further, Fla.Stat. §48.193(1)(a)(9) provides for the exercise of specific jurisdiction for: "Entering into a contract that complies with §685.102."

In summary, to properly confer jurisdiction, as here, a contract need only:

(1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;

(2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;

(3)    Involve consideration of not less than $250,000, or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;

(4)    Not violate the United States Constitution; and

(5)    Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

*Steffan,* Case No. 16-Civ-25295-Altonaga, at 11 (citations omitted).

Just as in *Steffan* and *Lienemann,* here, all five (5) conditions are met: (1) Defendant AKUA and Defendant NCL entered into the above "Standard Shore Excursion Agreement;" (2) in the Agreement, Defendant AKUA has submitted to this Court's jurisdiction; (3) PRIDE OF AMERICA has been sailing in Hawaii since 2005 and is estimated to do at least fifty (50) 7-day cruises each year and it calls at Kahului, Maui during each cruise; (4) the Agreement does not violate the Constitution and (5) Defendant NCL is headquartered in Miami, Florida. *Id.* at 11-13

Finally, just as in *Steffan* and *Lienemann,* despite the self-serving clause in the Agreement seeking to disavow creation of third party benefits or claims, Plaintiff's Decedent here was very much a third-party beneficiary to the Agreement between Defendant AKUA and Defendant NCL. In the Amended Complaint, in pertinent part, Plaintiff alleges:

> 163.    Defendant NCL and Defendant AKUA LLC d/b/a MAUI REEF ADVENTURES, ***entered into a contract to provide shore excursions for passengers on board Defendant NCL's ship(s) to which Plaintiff was not a party***.
>
> 164.    The contract between Defendant NCL and Defendant AKUA LLC d/b/a MAUI REEF ADVENTURES ***manifests the specific and express intent of the contracting parties that the contract primarily and directly benefit Defendant NCL's passengers, including Plaintiffs***, with legally enforceable rights as third parties under said contract by requiring, among other things, Defendant AKUA LLC d/b/a MAUI REEF ADVENTURES, to maintain insurance, subject itself to the jurisdiction of Florida courts, and/or to exercise reasonable care in the operation of the subject Molokini Crater Snorkeling Paradise excursion and relative to Defendant NCL's passengers, including Plaintiffs.
>
> 165.    This contract was ***breached by both Defendant AKUA LLC d/b/a MAUI REEF ADVENTURES and Defendant NCL as a result of acts and/or omissions that include***. . . .

  166. *As a direct and proximate result of the breach of contract by Defendant NCL and Defendant AKUA LLC d/b/a MAUI REEF ADVENTURES, Linda Smith drowned*.

[Amended Complaint (DE 24) at ¶¶163-165 (emphasis added)]

In determining the existence of a third-party beneficiary relationship, the Restatement (Second) of Contracts, followed by the Federal Courts, provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts §302.

The Restatement defines beneficiaries of a contract as being either intended or incidental. Only an intended beneficiary has standing to enforce a contract between two other parties. *New Construction v. U.S.,* 79 Fed.Cl. 81, 95 (Ct.Cl. 2007); *Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.,* 944 A.2d 1055, 1064 (D.C. 2008). Whether a person is an intended beneficiary with the resulting right to sue depends upon the intent of the parties to the contract. That intent may be articulated in the contract itself, or discerned or imputed from the statutory context that prompted the contract to be executed. *See generally Holbrook v. Pitt,* 643 F.2d 1261, 1271 (7th Cir. 1981); *Smith v. Chattanooga Medical Investors, Inc.,* 62 S.W.3d 178 (Tenn.Ct.App. 2001).

Importantly, courts do not require that plaintiffs who contend they are third party beneficiaries be expressly identified in the contract as third party beneficiaries, or that an express provision grant them the right to sue to enforce the contract. *Bowhead Information Technology Services v. Catapult Technology, Limited*, 377 F.Supp. 166, 171 (D.D.C. 2005) (*citing Nortel Networks, Inc. v. Gold and Appel Transfer, S. A.,* 298 F.Supp.2d 81, 90 (D.D.C. 2004) (*citing R. A. Weaver & Assoc. v. Haas and Haynie Corp.,* 663 F.2d 168, 175 (D.C.Cir. 1980)); *see also*

Restatement (Second) of Contracts §308 ("It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made"); *County of Santa Clara v. Astra USA, Inc.*, 540 F.3d 1094, 1101 (9th Cir. 2008) (third parties need not point to "a provision expressly granting the third party the right to sue"). The Federal Circuit has explained that:

> "Exceptional" though it may be, third-party beneficiary status is not reserved for those parties who benefit expressly under a given contract. We note, too, that "the intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefited thereby." Evidence of intent can be adduced. In short, it is sufficient to ask in the typical case "whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him."

*Flexab v. U.S.,* 424 F.3d 1254, 1260 (Fed.Cir. 2005) (citations omitted).

Courts have also found intent to benefit a third party where, as here, one of the contracting parties owes the third party a pre-existing duty. Contrary to Defendant's implied argument, this duty need not be exclusively contractual. This "duty owed" interpretation is drawn from the language of §302(1)(a) of the Restatement (Second). For example, a Tennessee appellate court, upheld a third party claim based on its finding that "a nursing facility which has entered into a provider agreement with the state has a duty to assist a resident or applicant in applying for Medicaid eligibility." *Smith,* 62 S.W.3d at 178. Here, Defendant unquestionably owed Plaintiff's Decedent a duty of reasonable care under the circumstances which it attempted to fulfill, in part, through its contract and/or arrangement with Co-Defendant AKUA. *Doe v. Celebrity Cruise, et al.,* 394 F.3d 891 (11th Cir. 2004); *Isbell v. Carnival Corporation,* 462 F.Supp.2d 1232 (S.D.Fla. 2006); *Chan v. Society Expeditions, Inc.,* 123 F.3d 1287 (9th Cir. 1997); *Carlisle v. Ulysses Line Ltd.,* 475 So.2d 248 (Fla. 3rd DCA 1985).

Consequently, Defendant AKUA is subject to this Court's jurisdiction and Plaintiff submits that a "due process analysis" is unnecessary. *See Traber v. Carnival Corp., et al.*, Case No. 13-Civ-21554-Graham/Goodman (S.D.Fla. November 18, 2013); *see also Alexander Proudfoot Co.*

*World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989) ("the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, at 472-73 (n14) (1985)).  In this regard, Judge Altonaga has held:

> [T]he Florida Fourth District Court of Appeal explained, "[w]hen sections 685.101 and 685.102 are satisfied, personal jurisdiction may be exercised and the courts may dispense with the more traditional minimum contacts analysis." *Fons*, 2017 WL 2665069, at *3 (citing *Medytox Diagnostics, Inc. v. Samuels*, No. 14-CIV-20719, 2014 WL 12606310, at *5 (S.D. Fla. July 18, 2014)). "In other words, sections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone if certain requirements are met." *Id.*

*Steffan*, Case No. Case No. 16-Civ-25295-Altonaga, at 10 (citations in original).

**B.   Defendant AKUA has Agreed to Insure Defendant NCL Within the Meaning of Fla.Stat. §48.193(1)(a)(4)**

Paragraph 14 of the "Standard Shore Excursion Agreement" squarely implicates Defendant AKUA in "[c]ontracting to insure a person, property, or risk located within this state at the time of contracting" pursuant to Fla.Stat. §48.193(1)(a)(4).  The Agreement provides:

> **Section 14 - Indemnification**
>
> Operator agrees to indemnify, save, protect, and defend Norwegian, it's owners, employees, shareholders, legends, directors, representatives, parent and affiliated companies, successors and assigns, the vessels, crew and charterers, Norwegian represents as agent and hold them harmless from and against any and all losses, claims, liabilities, damages, causes of actions, proceedings, legal fees, costs and expenses which may arise or be claimed against Norwegian *as a consequence or arising from the business or operations of the Operator or the services the Operator provides to Norwegian and Passengers, including claims of negligent hiring and/or retention.* Operator further agrees to provide such defense, indemnity and hold harmless stated above wherever any such claims may be brought, including but not limited to, claims demands or litigation brought in the United States of America or in the country of the operators incorporation or base of operation against Norwegian or any of the vessels it represents.
>
> *Further and without limitation to any of the foregoing, if any Norwegian Passenger who as a result of participating in the Operator's Shore Excursion is injured or damaged in any manner any claim in any manner is brought against Norwegian in the United States for such injury or damage, operator agrees to defend indemnify and hold harmless Norwegian for such claims no matter where such claims may be brought.* Operator shall be liable and responsible for the acts

of any of its employees, officers, representatives, and agents, relating to, and connection with, or otherwise arising as a consequence of the Shore Excursions. (Emphasis added.)

C.  **Plaintiff's Amended Complaint Further Alleges Sufficient Facts to Allow the Court to Exercise Personal Jurisdiction over Defendant AKUA Pursuant to Florida's Long Arm Statute**

Even if the Court does not deny Defendant AKUA's Motion to Dismiss based upon the consent to jurisdiction and commitment to insure/indemnify Defendant NCL discussed above, a review of Plaintiff's Amended Complaint evinces that Plaintiff has pled sufficient allegations for this Court to justifiably exercise jurisdiction over Defendant AKUA.

1.  **Personal Jurisdiction Standard**

Generally, when performing a jurisdictional analysis pursuant to the long-arm statute, the Court conducts a two-part inquiry. *See Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). The court first determines whether "the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of" Florida's long-arm statute, Fla.Stat. §48.193. *Id* . If the requirements of the long-arm statute are satisfied, then "the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." *Id.* Importantly, however, a plaintiff's allegations in a complaint must be accepted as true, and if the evidence conflicts with defendant's affidavits, the court "**must construe all reasonable inferences in favor of the plaintiff**." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (emphasis added); *see also Nissim Corp. v. ClearPlay, Inc.*, 351 F.Supp.2d 1343, 1346 (11th Cir. 2004).

Florida's long-arm statute contains two provisions that confer personal jurisdiction over a non-resident defendant. The first, Fla.Stat. §48.193(1) (specific jurisdiction), confers jurisdiction if a party's activities in the forum are related to the cause of action alleged in the complaint.[2] *See Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000). "Although the term 'arising from' is somewhat broader than the concept of proximate cause, under Florida law

there must nevertheless be some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state." *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F.Supp.2d 1246, 1269 (S.D.Fla. 2001) (citation omitted). This kind of jurisdiction is often referred to as "connexity jurisdiction," since it requires a causal connection between the defendant's activities in the forum state and the plaintiff's cause of action. *See American Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127 (Fla. 1st DCA 1994).

The second provision of Florida's long-arm statute is found at Fla.Stat. §48.193(2) (general jurisdiction). Where specific jurisdiction cannot be exercised, a court in Florida may nonetheless exercise jurisdiction over a non-resident defendant where general jurisdiction can be established. *Id.* at 1127. "General jurisdiction, as distinguished from specific jurisdiction, does not require that the plaintiff's cause of action arise out of the nonresident defendant's contacts with [Florida]." *Id.* at 1127; *see also Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (the "general jurisdiction statute does not require connexity between a defendant's activities and the cause of action"). Therefore, general personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. *Sherrit*, 216 F.3d at 1292.

Specifically, the general jurisdiction statute provides, *inter alia*:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla.Stat. §48.193(2).

In construing the requirement of "substantial and not isolated activity," Florida courts have harmonized it with the constitutional due process requirements set forth by the United States Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). For instance, in *Nichols v. Paulucci*, 652 So.2d 389 (Fla. 5th DCA 1995), the court stated:

> In *Helicopteros*, the Supreme Court held that "continuous and systematic general business contacts" were required before a forum could exercise general jurisdiction

over a nonresident defendant. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873. The Court explained that a state exercises "general", as opposed to "specific", jurisdiction over a defendant when the cause of action does not arise out of, and is not related to, the defendant's contacts with the state. *Helicopteros*, 466 U.S. at 414 (n9), 104 S.Ct. at 1872 (n9). *See also White v. Pepsico, Inc.*, 568 So.2d 886, 888 (n3) (Fla. 1990). The due process standard of *Helicopteros* applies in this case because section 48.193(2) requires no causal connection between a plaintiff's claim and the defendant's contacts with the state.

*Nichols*, 652 So. 2d at 391.

Accordingly, in order to obtain jurisdiction under the general jurisdiction statute, "the defendant must be found to have maintained 'continuous and systematic general business contacts' with the forum, so that it can properly be considered to be 'present' in the forum." *Patterson*, 632 So. 2d at 1127 (citation omitted). These contacts are commonly assessed over a period of years from before the incident up to the plaintiff's filing of the complaint. *See Woods*, 739 So. 2d at 620. The *Woods* court explained:

> The record demonstrates that defendant engaged in continuous and systematic business activities with Florida and derived great pecuniary benefit from its transactions here….
>
> **Although defendant maintains that some of these business contacts took place after the accident in this case, that fact is not dispositive.** "[C]ontacts are commonly assessed over a period of years prior to the plaintiff's filing of the complaint."….
>
> While any one of these activities alone may not be deemed sufficient, considered collectively, they establish personal jurisdiction.

*Id.* at 620-21 (citations omitted) (emphasis added); *see also Helicopteros*, 466 U.S. at 409-11 (examining the defendant's contacts over a seven-year period, up to the time the lawsuit was filed).

In addition, the court in *Nichols* held as follows:

> We recognize that, standing alone, any one of [defendant's] contacts with the state of Florida might not constitute substantial activity within the meaning of section 48.193(2). **When viewed in its entirety, however, the evidence presented in this case supports the trial court's ruling that it possessed personal jurisdiction over [defendant].**

*Id.* at 392-93 (footnotes omitted).

Applying the above standard here, the Court may properly exercise personal jurisdiction over Defendant AKUA pursuant to Florida's general jurisdiction statute, Fla.Stat. § 48.193(2), if Defendant AKUA maintained "continuous and systematic general business contacts" with Florida. Assessing the contacts maintained over a period of years and considering them *collectively*, Plaintiff's Complaint contains sufficient allegations for this Court to exercise general personal jurisdiction over Defendant AKUA.

Specifically, in *Stubbs*, the Eleventh Circuit reiterated its previous holding that if a "'subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction…, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction.'" *Stubbs*, 447 F.3d at 1361 (citing *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002)). The court went on to state that this precedent "concerning parents and subsidiaries has been extended to other principal-agent relationships, when the resident corporation acts on behalf of its foreign affiliates." *Stubbs*, 447 F.3d at 1361.

To that end, in reversing the district court's dismissal, the *Stubbs* court found that the plaintiff made a sufficient showing that general personal jurisdiction existed over the defendant, Nassau Resort, and held as follows:

> Similar to the subsidiaries in *Meier*, Crystal Palace acted as an advertising and booking department for Nassau Resort…. Moreover, "[r]evenues generated for the Nassau Resort through Crystal Palace U.S., Inc.'s marketing are realized at the Nassau Resort."… Similar to the relationship between the Florida subsidiaries and the nonresident corporations in *Meier*, we *find **the relationship between Crystal Palace and Nassau Resort was such that Crystal Palace was an "agent" of Nassau Resort, and its activities may be used as the basis to assert general jurisdiction over Nassau Resort.***

*Stubbs*, 447 F.3d at 1362 (emphasis added).

In the present matter, as in *Stubbs*, there is an alleged agency relationship between Defendant AKUA and Defendant NCL. [Amended Complaint Count XI for "Apparent Agency or

Agency by Estoppel Against NCL and AKUA"][2] Thus, under *Meier* and *Stubbs*, the activities of Defendant NCL may be imputed to Defendant AKUA by virtue of this agency relationship.

As alleged in the Amended Complaint, Defendant NCL's principal place of business is in Florida. [Amended Complaint at ¶¶5-6]. Considering its entire fleet of cruise ships, Defendant NCL generates a significant amount of revenue by selling cruise ship vacations out of its Florida headquarters. A substantial portion of that revenue is earned by selling shore excursions to passengers, such as the one sold to Plaintiff's Decedent here. *See generally Meyer v. Carnival Corp.*, 938 F. Supp.2d 1251, 1259 (S.D.Fla. 2013) ("For Defendant Carnival… **shore excursions are a great source of profit**, and as Carnival's representative conceded, **its annual shore excursion program could exceed one hundred million dollars**.") (emphasis added).

## II. Plaintiff's Amended Complaint is Not a Shotgun Pleading and Defendant Misconstrues the Pleading Standard in Federal Court

Plaintiff adopts herein the argument contained in **Section I** of Plaintiffs' Response in Opposition to Defendant NCL's Motion to Dismiss [DE 45].

Moreover, contrary to Defendant's contention that Plaintiff's Amended Complaint adopts allegations of preceding counts, the only re-allegations contained in the Amended Complaint are those related to "Jurisdiction and Venue" and "General Allegations." There is no proscription in the FRCP or interpreting law against this.

"[I]t remains black-letter law today that in the ordinary case a complaint need not provide detailed factual allegations in order to withstand 12(b)(6) scrutiny. In other words, *Twombly* neither eliminated nor marginalized the liberal pleading rules." *Rocha v. Carnival Corporation,* Case No. 10-22799-Civ-Lenard/Turnoff (S.D.Fla. Jan. 12, 2011) (Report and Recommendation on Motion to Dismiss) (citations omitted).

---

[2] In addition, the Complaint also alleges the existence of a joint venture between all Defendants. [Amended Complaint Count XII for "Joint Venture Between NCL and AKUA]

### III. Plaintiff Has Properly Pled a Cause of Action for Negligence in Count VI of the Amended Complaint

Plaintiff adopts herein the argument contained in **Section II** of Plaintiffs' Response in Opposition to Defendant NCL's Motion to Dismiss [DE 45].

Although Plaintiff's Amended Complaint describes in detail the various manners in which Defendant was negligent, Plaintiff has properly alleged the applicable standard of care:

> 93. At all times material, Defendant, AKUA LLC d/b/a MAUI REEF ADVENTURES owed Plaintiff, VERNON C. SMITH, and his wife, LINDA L. SMITH, deceased, a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406 (1959); *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989), *on remand,* 715 F.Supp. 1069 (M.D.Fla. 1989). This duty included warning Plaintiff of known or foreseeable dangers. *Keefe,* 867 F.2d at 1322; *Witover v. Celebrity Cruises, Inc.,* 2016 WL 661065, *3 (S.D.Fla. 2016); *Lapidus v. NCL America LLC,* 924 F.Supp.2d 1352 (S.D.Fla. 2013).

[Amended Complaint (DE 24) at ¶93]

### IV. Plaintiff Has Properly Pled a Cause of Action for Intentional Failure to Warn and Punitive Damages in Count VII of the Amended Complaint

Plaintiff adopts herein the argument contained in **Section III** of Plaintiffs' Response in Opposition to Defendant NCL's Motion to Dismiss [DE 45].

Defendant provides absolutely no support for its argument that a "claim for intentional failure to warn does not exist."

Moreover, contrary to Defendant's argument that punitive damages are not recoverable,"[u]nder general maritime law, a plaintiff may recover punitive damages 'where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct.'" *L.A. v. Royal Caribbean Cruises, Ltd., C*ase No.17-Civ-23184-Gayles (S.D.Fla. June 22, 2018) (quoting *Lobegeiger v. Celebrity Cruises, Inc.*, Case No. 11-Civ-21620-Altonaga (S.D.Fla. Aug. 23, 2011) (quoting *Atlantic Sounding Co., Inc. v. Townsend,* 557 U.S. 404, 409 (2009)); *see also Jackson-Davis v. Carnival Corp.,* Case No. 17-Civ-24089-Torres (S.D.Fla. Mar. 23,

2018); *Fleischer v. Carnival Corp.,* Case No. 15-Civ-24531-Moore (S.D.Fla. Mar. 17, 2016); *Morton v. Carnival Corp.,* Case No. 16-Civ-20134-Scola, (S.D.Fla. June 13, 2016); *Garcia v. Carnival Corp.,* 2014 WL 1251509, *2 (S.D.Fla. April 10, 2014). It has been further held that where "a plaintiff has stated a valid cause of action, ***general allegations of wanton, willful, are outrageous conduct are sufficient to sustain a demand for punitive damages***." *L.A.,* at p. 5 (citing *Doe v. Royal Caribbean Cruises, Ltd.,* Case No. 11-Civ-23323-Goodman (S.D.Fla. March 19, 2012) (emphasis added).

In fact, a plaintiff need not even prove intentional conduct anymore. *Doe,* Case No. 11-Civ-23323-Scola ("[t]he plaintiff is no longer required to prove intentional misconduct"); *see also Vairma v. Carnival Corp.,* Case No. 15-Civ-20724-Seitz (S.D.Fla. May 27, 2015).

**V.     Plaintiff Has Properly Pled Causes of Action for Wrongful Death and the Maritime Death Action May be Supplemented by State Wrongful Death Acts In Counts VIII-X**

Plaintiff adopts herein the argument contained in **Section IV** of Plaintiffs' Response in Opposition to Defendant NCL's Motion to Dismiss [DE 45].

Here, the Amended Complaint alleges that the subject snorkeling excursion took place at Molokini Crater (or the nearby waters) in Maui, Hawaii [Amended Complaint (DE 24) at ¶¶28-35] and that Plaintiff was pronounced dead at the Kihei Boat Ramp in Maui, Hawaii. [Amended Complaint (DE 24) at ¶36]  Accordingly, Defendant AKUA's acts of negligence occurred in Hawaiian waters where the casualty occurred and on land in Hawaii where Defendant AKUA maintains its base of operations.[3]  Depending on what outstanding discovery reveals about the true nature of the relationship between Defendants AKUA and NCL, acts of negligence by Defendant AKUA in Florida which proximately led to Plaintiff's Decedents' death may also exist.

As with the allegations against Defendant NCL**,** a plain reading of the Amended Complaint

---

[3] To the extent the Court deems Defendant's argument that "there are no allegations of fact that the Decedent died in U.S. territorial waters" valid, Plaintiff requests leave of Court to allege that Molokini Crater and Kihei Boat Ramp are located in Maui, Hawaii and in U.S. territorial waters.

reveals that Plaintiff has pled Count X, the DOHSA (Death on the High Seas Act) cause of action, *in the alternative* "should it be determined that Linda Smith died on the High Seas." [Complaint (DE 24) at ¶131]  Once established in discovery that Plaintiff's Decedent's death occurred in territorial waters, Plaintiff anticipates voluntarily dismissing Count X of the Amended Complaint.

Next, as concerns Defendant's misplaced and passing argument at 21 of its Motion to Dismiss that Plaintiff "has not alleged any facts establishing that AKUA proximately caused the death of Lina L. Smith" to support Plaintiff's general maritime law, Hawaii, Florida, and DOHSA death claims, Plaintiff has properly alleged the duties owed by Defendant and the breaches thereof as follows:

- Count VIII for Claim under General Maritime Law and Hawaii Wrongful Death Act – Paragraphs 111 to117

- Count IX for Claim under General Maritime Law and Florida Wrongful Death Act – Paragraphs 123 to 129

- Count X for Claim under DOHSA – Paragraphs 135 to 139

**VI. Plaintiff Has Properly Pled a Cause of Action for Apparent Agency in Count XI of the Amended Complaint**

Contrary to Defendant's argument, the 11th Circuit has held that apparent agency **is a viable cause of action against a cruise line**.  *Franza v. Royal Caribbean Cruises, Ltd.,* 772 F.3d 1225 (11th Cir. 2014).   In this vein, the 11th Circuit has held:

> On appeal, Franza raises two questions of first impression. No binding precedent in this Court or in its predecessor, the former Fifth Circuit Court of Appeals, decided whether a passenger might invoke the principles of actual agency, or those of apparent agency, to impute to a cruise line liability for the medical negligence of its onboard nurse and doctor. After thorough review, we hold that both theories are available in this case. We have repeatedly emphasized that vicarious liability raises fact-bound questions, and we can discern no sound reason in law to carve out a special exemption for all acts of onboard medical negligence.
>
> As we have noted at some length, the principles of agency permeate the general maritime law, *see Archer,* 834 F.2d at 1573, and apparent agency is no exception. ***The great weight of admiralty precedent has long allowed plaintiffs to sue shipowners based on the apparent authority of third-parties...*** [G]iven the broad salience of agency rules in maritime law, *see Archer,* 834 F.2d at 1573, and the important role

the federal courts play in setting the bounds of maritime torts, *see Exxon,* 554 U.S. at 508 (n 21), 128 S.Ct. at 2630, we think apparent agency principles apply in this context.

*Id.* at 1228-51 (emphasis added).

In fact, under almost identical circumstances, the very cause of action for "Apparent Agency" contained in Count XI of Plaintiff's Amended Complaint has been upheld against attack in a Motion to Dismiss in many respects identical to that filed by Defendant here. *Finkelstein v. Carnival Corp., et al.*, Case No. 14-Civ-24005-Ungaro (S.D.Fla. Jan. 20, 2015) (Order on Motion to Dismiss attached as **Exhibit C**). In *Finkelstein,* Judge Ungaro held:

> First, Plaintiff can maintain an apparent agency or agency by estoppel claim against Carnival even if Plaintiff's claim for negligence against Carnival is dismissed. Plaintiff's apparent agency claim seeks to hold Carnival liable for the negligence of the excursion companies by an apparent agency relationship between Carnival and the excursion companies. *See Ash v. Royal Caribbean Cruises Ltd.*, 2014 WL 6682514, at *7 (S.D. Fla. Nov. 25, 2014)...
>
> Second, the Court finds that Plaintiff has adequately alleged an apparent agency claim....
>
> The Court finds that it is not unreasonable as a matter of law to believe that a shore excursion company was an agent of a cruise line and Plaintiff has pleaded allegations sufficient to support his apparent agency claim. *See Aronson*, 2014 WL 3408582, at *12; *Gentry*, 2011 WL 4737062, at *5-6; *Gayou*, 2012 WL 2049431, at *9. Plaintiff alleges that Carnival manifested an apparent agency relationship with the excursion entities by: advertising and selling tickets for the Soller & Train Ride tour through both Carnival's website and on board the *Carnival Sunshine*; marketing the excursion using the Carnival logo; maintaining an excursion deck on the cruise ship; and recommending that Plaintiff not engage in other tours not sold through Carnival. D.E. 1 ¶ 46. These allegations are sufficient to support Plaintiff's apparent agency claim. *See Aronson*, 2014 WL 3408582, at *12; *Gayou*, 2012 WL 2049431, at *9.

*Id.* at pp. 5-6.

Defendant also ignores Judge Scola's recent ruling rejecting this very argument in *Bailey.* As concerns a cause of action for "Apparent Agency" in the context of a shore excursion injury, Judge Scola held:

> Bailey alleges a number of representations Carnival made that she claims led her to believe Lost Mayan was Carnival's agent. For example, she points to the "series of internet, brochures and other media . . . which advertise the availability and safety

> of various Carnival excursions, which were presented as . . . integral [to] the cruise ship experience"; Carnival's "market[ing] the . . . excursion on its website by guaranteeing the best price and offering [] 110% of the price difference for a better price for any excursion '[it] offer[s]'"; and "Carnival . . . crew members . . . promoted, advertised, explained, coordinated and supervised . . . the subject zip-line excursion." (Am. Compl. at ¶ 41(a)–(c).)  Bailey has set forth allegations of specific undertakings by Carnival that, if proved, could establish the requisite manifestations by the principal, causing a third party like Bailey to reasonably believe that Lost Mayan was Carnival's agent. Moreover, ***even if the complaint merely pleaded that "Carnival held out the owners and/or operators of the zip-line excursions as its apparent agent[s]" and that "Carnival represented to . . . Plaintiff[] that the operator of the zipline excursion was acting for the benefit of Carnival" (Am. Compl. at ¶ 41), a claim for apparent agency would not necessarily be foreclosed, if supported by underlying facts. "An apparent agency relationship may be created by silence where the principal knowingly permits the agent to act as if the agent is authorized, or by acting in a manner which creates a reasonable appearance of an agent's authority."*** *Gayou*, 2012 WL 2049431, at *9.
>
> The Court is also not persuaded by Carnival's argument that the language on Bailey's ticket (describing the excursion operators as "independent contractors" and disclaiming any liability) or on Carnival's website (same) forecloses any apparent agency liability. ***If the Court were to consider these documents at this stage of the litigation—which it appears it should not—the Court would not, in any event, find them sufficient to support dismissal of this count.*** The language Carnival relies on presents factual issues that the Court declines to consider at the motion-to-dismiss stage of this litigation.

*Bailey v. Carnival Corporation, et al.*, Case No. 18-Civ-22214-Scola, pp. 9-10 (S.D.Fla. March 18, 2019) (emphasis added) [Order on Motion to Dismiss attached as **Exhibit D**); *see also Richards v. Carnival Corporation, et al.,* Case No. 14-Civ-23212-Cooke (S.D.Fla. April 21, 2015) (again, rejecting of this very argument).

The necessary elements of a cause of action for apparent agency are: "1) the alleged principal made a manifestation which caused a third party to believe that an alleged agent had authority to act for the benefit of the principal; 2) such a belief was reasonable; and 3) the claimant reasonably relied upon that belief to his or her detriment." *Bridgewater v. Carnival Corp.,* Case No. 10-Civ-22241-King (S.D.Fla. March 2, 2011) (Order Granting in Part Defendant Carnival's Motion to Dismiss) (citing *Doonan v. Carnival Corp.,* 404 F.Supp.2d 1367, 1371 (S.D.Fla. 2005).

All have been properly alleged here.

Finally, issues of apparent agency are fact specific and also not susceptible to adjudication at the Motion to Dismiss stage. *See generally Franza,* 772 F.3d at 1225; *Doonan,* 404 F.Supp.2d at 1367.

### VII. Plaintiff Has Properly Pled a Cause of Action for Joint Venture in Count XII of the Amended Complaint

Plaintiff adopts herein the argument contained in **Section VI** of Plaintiffs' Response in Opposition to Defendant NCL's Motion to Dismiss [DE 45] and again relies on *Finkelstein v. Carnival Corp., et al.*, Case No. 14-Civ-24005-Ungaro (S.D.Fla. Jan. 20, 2015) (Order on Motion to Dismiss attached as **Exhibit C**).[4]

### VIII. Plaintiff Has Properly Pled a Cause of Action for Third-Party Beneficiary in Count XIII of the Amended Complaint

As discussed above in Section I, Plaintiff has properly pled a cause of action for Third-Party beneficiary in Count XIII.

Notwithstanding the self-serving clause contained in the "Standard Shore Excursion Agreement," Plaintiff's Amended Complaint has properly pled all elements of a cause of action based upon Plaintiff's Decedent's status as a third-party beneficiary: (1) the existence of a contract in which plaintiff is not a party, (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff, (3) breach of that contract by one of the parties and (4) damages to plaintiff resulting from the breach. *See Lapidus v. NCL Am. LLC*, 2012 U.S. Dist. LEXIS 82720, *19 (S.D.Fla. June 14, 2012).

### IX. Mr. Smith's Claim for Loss of Consortium is Viable Under Florida and Hawaii's Wrongful Death Acts

Plaintiff adopts herein the argument contained in **Section X** of Plaintiffs' Response in Opposition to Defendant NCL's Motion to Dismiss [DE 45].

---

[4] Plaintiff withdraws the argument relative to the Court's consideration of the "Standard Shore Excursion Agreement."

DATE: February 10, 2020

                          Respectfully submitted,

                          **EDUARDO J. HERNANDEZ, LLC**
                          *Attorneys for Plaintiff*
                          10691 N. Kendall Drive - Suite 109
                          Miami, Florida 33176
                          Telephone: (305) 567-0910
                          Facsimile: (786) 454-8905

                          By:    */s/ Eduardo J. Hernandez*
                                  EDUARDO J. HERNANDEZ
                                  Florida Bar No. 061451
                                  ehernandez@ejh-law.com


## CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 10th day of February, 2020, via Email to all Counsel on the attached Service List.

                          **EDUARDO J. HERNANDEZ, LLC**
                          10691 N. Kendall Drive - Suite 109
                          Miami, Florida 33176
                          Tel.: (305) 567-0910
                          Fax.: (786) 454-8905

                          */s/ Eduardo J Hernandez*
                          EDUARDO J. HERNANDEZ
                          Florida Bar No.: 061451
                          ehernandez@ejh-law.com

## SERVICE LIST

**David W. Singer**
Florida Bar No. 306215
dsinger@1800askfree.com
**Peter G. Walsh**
Florida Bar No. 970417
pwalsh@1800askfree.com
DAVID W. SINGER & ASSOC., P.A.
1011 South Federal Highway
Hollywood, Florida 33020
Tel.: (954) 920-1571
Fax.: (954) 926-5746

**Eduardo J. Hernandez**
Florida Bar No. 061451
ehernandez@ejh-law.com
EDUARDO J. HERNANDEZ, LLC
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

**Attorneys for Plaintiff**

**Michael Gordon**
Florida Bar No. 505498
mgordon@fflegal.com
FORMAN & FRIEDMAN
2 South Biscayne Blvd.- Suite 2300
Miami, Florida 33131
Tel.: (305) 358-6555
Fax.: (305) 374-9077

**Attorneys for NCL Defendants**

**Bruce R. Marx**
Florida Bar No. 914177
bmarx@marlowadler.com
MARLOW, ADLER & ABRAMS, PA
4000 Ponce De Leon Boulevard - Suite 570
Coral Gables, Florida 33146
Tel.: (305) 446-0500
Fax.: (305) 446-3667

**Attorneys for Defendant Akua**